# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

SATA GmbH & Co. KG,

    Plaintiff

v.

NingBo Genin Industrial Co., Ltd. D/b/a Hoteche,

    Defendant

2:16-cv-02546-JAD-GWF

**Order Granting Motion for Default Judgment and Permanent Injunction**

[ECF No. 12]

    Plaintiff SATA GmbH & Co. KG moves for default judgment against defendant Ningbo Genin Industrial Co., Ltd. d/b/a Hoteche in this action for trademark infringement, unfair competition, trademark counterfeiting, and design-patent infringement.[1] Having weighed the factors outlined by the Ninth Circuit in *Eitel v. McCool*,[2] I grant SATA's motion for default judgment, award statutory damages, and issue a permanent injunction.

## Background[3]

    SATA is a century-old German Corporation that manufactures paint spray guns and related equipment worldwide.[4] SATA's United States-directed business produces over $15 million annually with more than 100,000 paint spray guns and reservoirs sold.[5] SATA owns four trademark registrations that it claims Hoteche infringed: (1) a design mark of a blue band

---

[1] ECF No. 12.

[2] *Eitel v. McCool.*, 782 F.2d 1470, 1471 (9th Cir. 1986).

[3] At this default-judgment stage, I take all of SATA's well-pled, factual allegations as true.

[4] ECF No. 12 at 2.

[5] *Id.* at 3.

wrapped around the air-cap ring of a paint spray gun (Registration No. 2,774,593);[6] (2) a design mark of a band of any color extended around the air-cap ring of a paint spray gun (Registration No. 2,793,583);[7] (3) the standard character mark "1000" (Registration No. 4,920,510)[8]; and (4) the standard character mark "2000" (Registration No. 4,920,5111).[9] SATA also has two design patents that it claims Hoteche infringed: (1) an ornamental spray-gun design (Patent No. US D552,213 S);[10] and (2) a contrasting color spray-gun head ring (Patent No. US D459,433 S).[11] SATA uses the SATA Marks[12] to advertise and promote its products throughout the United States and the world.[13]

Hoteche also manufactures paint spray guns and related equipment.[14] It owns federal trademark registrations for the mark "Hoteche"[15] and sells paint spray guns that have a blue band wrapped around the air-cap ring and that are marked "1000" and "2000."[16]

On November 1, 2016, SATA representatives attended the Automotive Aftermarkets Product Expo (AAPEX) trade show in Las Vegas, Nevada, and observed Hoteche's booth with

---

[6] *Id.*

[7] *Id.*

[8] *Id.* at 4.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] I refer to these trademarks and design patents collectively as the "SATA Marks."

[13] *Id.* at 3.

[14] *Id.* at 4.

[15] ECF No. 12-2 at 16–18.

[16] ECF No. 12-1 at 5–8.

infringing products on display and for sale.[17] SATA then filed this suit, asserting trademark-infringement,[18] unfair-competition,[19] and trademark-counterfeiting[20] claims under the Lanham Act, and design patent-infringement claims under 35 U.S.C. § 171.[21] Hoteche was served with a copy of the summons and complaint at its booth the next day, but it has not responded or otherwise appeared in this case.[22] On SATA's motion, the Clerk of Court entered default against Hoteche.[23]

## Discussion

### A. Default-judgment standard

Federal Rule of Civil Procedure 55(b)(2) permits a plaintiff to obtain a default judgment after the clerk enters default based on a defendant's failure to defend.[24] After entry of default, the complaint's factual allegations are taken as true except those relating to damages.[25] "[N]ecessary facts not contained in the pleadings, and claims [that] are legally insufficient, are not established by default."[26] The court may require a plaintiff to provide additional proof of facts or damages in

---

[17] ECF No. 12 at 4.

[18] ECF No. 1 at 9; 15 U.S.C. § 1114 (2012).

[19] ECF No. 1 at 10; 15 U.S.C. § 1116(d) (2012).

[20] ECF No. 1 at 8; 15 U.S.C. § 1125(a) (2012).

[21] ECF No. 1 at 12.

[22] ECF No. 2; ECF No. 12 at 2.

[23] ECF No. 12 at 7; ECF No. 6.

[24] FED. R. CIV. P. 55(b)(2).

[25] *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam); FED R. CIV. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied.").

[26] *Cripps v. Life Ins. Co.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

3

order to ensure that the requested relief is appropriate.[27] Whether to grant a motion for default judgment lies within the district court's discretion,[28] which is guided by the seven factors outlined by the Ninth Circuit in *Eitel v. McCool:*

> (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[29]

**B.     Analyzing the *Eitel* Factors**

**1.     Possibility of prejudice to plaintiffs**

SATA sued Hoteche to stop it from infringing SATA's distinctive design and marks.[30] SATA served Hoteche with adequate process through its authorized agent and used certified mail and email to serve Hoteche with SATA's request for entry of clerk's default, clerk's default, and the motion for default judgment.[31] Hoteche ignored all of it. SATA would be prejudiced by requiring SATA to expend additional resources litigating an action that appears to be uncontested. And SATA has no other recourse to prevent Hoteche's further infringement of its trademarks and patents. This factor thus weighs in favor of default judgment.

**2.     Substantive merits and sufficiency of the claims**

The second and third *Eitel* factors require SATA to demonstrate that it has stated a claim on which it may recover.[32] SATA sufficiently alleges its trademark-infringement, unfair-competition, trademark-counterfeiting, and design-patent-infringement claims.

---

[27] *See* FED. R. CIV. P. 55(b)(2).

[28] *Eitel*, 782 F.2d at 1471.

[29] *Id.* at 1471–72.

[30] ECF No. 12 at 2–5.

[31] *Id.* at 2.

[32] *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

To establish trademark-infringement and unfair-competition claims, SATA must show that: (1) it is the owner of a valid, protectable mark, and (2) Hoteche is using a confusingly similar mark that is likely to cause deception concerning the origin of the goods.[33] SATA has federal trademark registrations for: (1) a blue band wrapped around the paint spray-gun air-cap ring;[34] (2) a band of any color wrapped around the paint spray-gun air-cap ring;[35] (3) the mark number "1000";[36] and (4) the mark number "2000."[37] SATA has provided screenshots of Hoteche's website showing products with confusingly similar marks during the same time period that SATA was selling its own products.[38] SATA alleges that the concurrent advertising of confusingly similar products is likely to cause deception regarding the origin of the goods.[39] SATA therefore sufficiently pleads claims for trademark infringement and unfair competition.

For its trademark-counterfeiting claim, SATA must show that: (1) it is the owner of a valid, protectable mark; and (2) Hoteche intentionally used the mark in commerce, knowing that it was counterfeit.[40] A mark is counterfeit if "[i]t is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such

---

[33] 15 U.S.C. § 1114 (2012); 15 U.S.C. § 1116 (2012); *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.,* 174 F.3d 1036, 1046 (9th Cir. 1999); *see also New W. Corp. v. NYM Co. of Cal.,* 595 F.2d 1194, 1201 (9th Cir. 1979) (explaining that the elements for trademark infringement and unfair competition are essentially the same).

[34] ECF No. 12 at 3.

[35] *Id.*

[36] *Id.* at 4.

[37] *Id.* at 4.

[38] ECF No. 12-2 at 4–7.

[39] ECF No. 12 at 10–12.

[40] 15 U.S.C. § 1114(1)(a) (2012).

mark was so registered."[41]  If the mark is intentionally and knowingly distributed, a defendant is susceptible to heightened liability.[42]  SATA has valid trademarks for the colored bands and marks, and Hoteche's website advertises identical, counterfeit versions of those marks for sale.[43]  SATA argues that Hoteche knowingly and intentionally counterfeited its marks because: (1) SATA has been a leader in the paint-spray gun industry for over a century, so Hoteche would have known of its brand and trademarked design;[44] (2) Hoteche would have seen SATA's trademarks and patents when it registered its own intellectual property;[45] and (3) despite adequate service of process and multiple ignored opportunities to participate in this litigation, Hoteche continues to advertise the counterfeit products on its website.[46]  I therefore find that SATA has sufficiently pled that Hoteche intentionally and knowingly engaged in trademark counterfeiting.

Finally, design-patent infringement is governed by the "ordinary observer" test.[47]  Infringement of a design patent occurs if "an ordinary observer, familiar with the prior art, would be deceived into thinking that the accused design was the same as the patented design."[48]  Complete similarity is not required.[49]  Hoteche's products have the same general visual appearance as SATA's, such that it is likely that a purchaser would be confuse Hoteche's product

---

[41] 15 U.S.C. § 1116(d)(1)(B)(i) (2012).

[42] 15 U.S.C. § 1117 (b)(1) (2012); *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005).

[43] ECF No. 12-2 at 4–7

[44] ECF No. 12 at 11–13, 15.

[45] *Id.* at 21.

[46] *Id.* at 16, 18.

[47] *Gorham Mfg. v. White*, 81 U.S. 511, 528 (1871); *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008).

[48] *Egyptian Goddess*, 543 F.3d at 672; *see also Gorham*, 81 U.S. at 528.

[49] *Gorham*, 81 U.S. at 527–28 (discussing that an infringing product may be dissimilar to experts as long as it is similar to the ordinary observer).

with SATA's patented designs. So, I find that SATA has sufficiently pled all of its claims, and the second and third *Eitel* factors weigh in favor of entering default judgment.

### 3. Amount at stake

The fourth *Eitel* factor requires me to consider "the amount of money at stake in relation to the seriousness of [Hoteche]'s conduct."[50] SATA seeks $500,000 in statutory damages under the Lanham Act.[51] The Lanham Act awards no less than $1,000 and no more than $200,000 in statutory damages "per type of goods or services sold, offered for sale, or distributed,"[52] and willful infringements increase the statutory-damages ceiling to $2,000,000.[53] District courts have "wide discretion" to grant statutory damages within those boundaries.[54]

Hoteche's actions entitle SATA to statutory damages, but SATA has not demonstrated that those actions are worth half a million dollars. SATA argues that Hoteche is a willful infringer because it is in the same industry as SATA, has its own registered trademarks, and should have been aware of SATA's marks.[55] SATA also stresses that Hoteche continues to advertise for sale the counterfeit products, despite notice of this litigation.[56] And it directs me to Hoteche's website, which, SATA explains, reflects that the defendant company has a net worth in excess of $50 million.[57] But that website also reflects that paint spray guns are just a part of

---

[50] *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002).

[51] ECF No. 12 at 16.

[52] 15 U.S.C. § 1117(c)(1) (2012).

[53] 15 U.S.C. § 1117(c)(2) (2012).

[54] *Cable/Home Commc'n Corp. v. Network Prod., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990); *see also Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1010 (9th Cir. 1994) (stating that courts have wide discretion in awarding statutory damages under an analogous provision of the Copyright Act).

[55] ECF No. 12 at 21.

[56] *Id.* at 18.

[57] ECF No. 12-2 at ¶ 5.

Hoteche's business. Hoteche boasts (perhaps in an imperfect translation) that it sells "saws, drills, grinders, hand tool, garden tools and much."[58] And SATA explains that the defendant's infringing products sell for less than $50 each.[59]

In light of this information, I find that statutory damages of $50,000 for this willful infringement are more appropriate, particularly when I am also issuing a permanent injunction against further infringement. Regardless, this sum-at-stake factor weighs in favor of a default judgment.

### 4. Possibility of dispute

The next *Eitel* factor I consider is the possibility that material facts are disputed. SATA adequately alleged its trademark-infringement, counterfeiting-infringement, patent-infringement, and unfair-competition claims against Hoteche.[60] Hoteche failed to respond or appear, so all of SATA's well-pled, material facts are admitted and presumed true. So this factor, too, weighs in favor of default judgment.

### 5. Possibility of excusable neglect

The sixth *Eitel* factor requires me to consider whether Hoteche's default may have resulted from excusable neglect. There is no evidence that Hoteche defaulted due to excusable neglect. The record reflects that SATA served Hoteche with process on November 3, 2016, while the company was still in Las Vegas for the AAPEX trade show.[61] Hoteche failed to answer or otherwise respond to the complaint.[62] SATA moved for entry of clerk's default on December

---

[58] *About Us*, NINGBO GENIN INDUSTRIAL CO., LTD. http://hoteche.en.ningboexport.com/jesus/about/hoteche.html (last visited Nov. 29, 2017); screenshot at ECF No. 12-2 at 12.

[59] ECF No. 12-1 at 9–10, ¶ 36.

[60] ECF No. 1 at 8–13.

[61] ECF No. 12 at 7.

[62] ECF No. 6.

5, 2016.[63]  And though SATA waited only two weeks to file a motion for clerk's default, this action has been pending for a year, giving Hoteche—who is still absent—ample time to appear in the litigation.  So, this factor weighs in favor of default judgment.

### 6. Policy for deciding cases on the merits

"Generally, default judgments are disfavored because cases should be decided upon their merits whenever reasonably possible."[64]  Hoteche's failure to participate in this case renders a decision on the merits "impractical, if not impossible."[65]  Although this factor almost always weighs against default judgment, the other factors outweigh this policy and balance in favor of a default judgment.

## B. Permanent injunctive relief

The Lanham Act permits a court to grant injunctions "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark infringement.[66]  A plaintiff seeking a permanent injunction must show:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[67]

"[A]ctual irreparable harm must be demonstrated to obtain a permanent injunction in a trademark

---

[63] *Id.*

[64] *Twentieth Century Fox v. Streeter*, 438 F. Supp. 2d 1065, 1072 (D. Ariz. 2006) (quoting *Eitel*, 782 F.2d at 1472).

[65] *See PepsiCo,* 238 F. Supp. 2d at 1177 (citing *Columbia Pictures Tele., Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001)).

[66] 15 U.S.C § 1116 (2012); *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006).

[67] *La Quinta Worldwide LLC v. Q.R.T.M., S.A. de C.V.*, 762 F.3d 867, 879 (9th Cir. 2014) (quotation omitted).

infringement action."[68]

   1.   **Irreparable injury**

A permanent injunction is appropriate here because SATA has pled sufficient facts to support an inference of irreparable injury. The Ninth Circuit has recognized that, in trademark cases, irreparable harm may be shown through evidence of the loss of prospective customers, goodwill, or reputation.[69] Although SATA has not shown evidence of actual confusion of the marks, SATA has offered facts that support a finding that it has suffered, and will continue to suffer, irreparable harm due to a loss of control over its marks, sales, and goodwill. SATA has shown that over the past century, it has spent considerable time and effort building an international brand that is highly valued and known for its quality, performance, and durability.[70] SATA has enjoyed annual sales in excess of $15 million in the United States alone.[71] SATA sells more than 100,000 paint spray guns and reservoirs in the United States each year and invests millions of dollars on marketing and promotional activities in the United States.[72]

Hoteche's conduct has impacted that goodwill. SATA and Hoteche are competitors,[73] and Hoteche has marketed the counterfeit products online and even exhibited the products at AAPEX—a trade show that SATA also attended.[74] Although Hoteche has been on actual notice of the existence of SATA's Marks since receiving the summons in November 2016,[75] it

---

[68] *Herb Reed Enter., LLC v. Florida Entm't Mgmt.*, 736 F.3d 1239, 1249 (9th Cir. 2013).

[69] *Stuhlbarg Intern. Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

[70] ECF No. 12 at 2–3.

[71] *Id.* at 3.

[72] *Id.* Additional promotional activities include: internet, television, newspapers, magazines, and point-of-sale displays. *Id.*

[73] *Id.* at 19.

[74] *Id.* at 13.

[75] ECF No. 2.

10

continues to advertise the infringing products for sale on its website, leaving no indication that it will stop using the protected marks.[76] SATA has thus established that Hoteche's continued sale of counterfeit products will cause SATA to suffer irreparable injury.

### 2. Insufficiency of monetary damages

The Ninth Circuit has also recognized that in trademark and unfair competition cases, a permanent injunction is typically favored as the remedy of choice because "there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."[77] Here, Hoteche has refused to participate in this litigation and still continues to advertise the infringing trademarks despite adequate notice. There is no indication that it will cease its infringing activity absent injunctive relief. And because Hoteche is based in China, it may be difficult or impossible for SATA to enforce and collect a monetary judgment. This factor thus supports injunctive relief.

### 3. Balance of hardships

The hardships also balance in SATA's favor. When balancing hardships, I must consider the respective difficulties that SATA and Hoteche would face with and without injunctive relief.[78] I find no hardships that Hoteche would endure besides being compelled to cease its unlawful conduct. But without an injunction, SATA will continue to be harmed because Hoteche is likely continue to infringe on SATA's marks and designs. Thus, this factor strongly favors injunctive relief.

### 4. Public Interest

The primary purpose of the Lanham Act is to "[p]rotect consumers against deceptive designations of the origins of goods."[79] Given the similarity between SATA's Marks and

---

[76] ECF No. 12 at 16.

[77] *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1180 (9th Cir. 1988).

[78] *MGM Studios, Inc., v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1220 (C. D. Cal 2007).

[79] *Int'l Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918 (9th Cir. 1980).

11

Hoteche's counterfeit marks, injunctive relief also serves the interest of the public by protecting consumers from unwittingly purchasing these counterfeit products.

In sum, SATA has shown that it is entitled to a permanent injunction that enjoins Hoteche—and its officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert with any of them and who have knowledge of this order by service or actual notice—from:

    a.    Using any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks in commerce including, without limitation: (i) by selling, offering for sale, distributing, promoting, or advertising any good or service in connection with such reproduction, counterfeit, copy, or colorable imitation of the SATA Marks; (ii) by displaying any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks on the website accessible through the domain name https://www.hoteche.com or any other website owned or controlled by Hoteche or that displays Hoteche's products (collectively, the "Enjoined Websites"); or (iii) by displaying any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks at any trade show in the United States, including but not limited to, at any future Automobile Aftermarket Products Expo ("AAPEX") trade show; and

    b.    Manufacturing, using, selling, offering to sell, or importing into the United States items embodying designs that are the same as or substantially similar to the designs claimed in U.S. design patents D552,213 S and D459,433 S, including, without limitation, by: (i) offering to sell and selling such products to individuals or companies in the United States through the Enjoined Websites or otherwise; or (ii) offering to sell or selling such products at any trade show in the United States, including, but not limited to, at any future AAPEX show.

## C. Attorney's fees and costs

SATA also requests attorneys fees in the amount of $14,378.50 and costs of $1,379.68.[80]

---

[80] ECF No. 12 at 25–26.

The Lanham Act permits an award of attorneys' fees to the prevailing party in "exceptional cases,"[81] and the Ninth Circuit has held that willful infringement cases like this one are "exceptional."[82] However, SATA's attorney's fees and costs requests fall short of what is required by the local rules of this court.

LR 54-14 requires that "a reasonable itemization and description of the work performed" be included when attempting to recover attorneys fees and that the time and labor required be included.[83] This ensures that fees are only awarded for work regarding Lanham Act claims. SATA has provided the court with copies of counsel's bills, but nearly all of the descriptions of the work performed are completely blacked out.[84] Surely not every word used to describe the work billed in this litigation matter will reveal an attorney-client confidence. And without those descriptions, I cannot determine if the requested fees are reasonable.

To obtain an award of costs, "A prevailing party who claims costs must file and serve a bill of costs and disbursements on the form provided by the clerk no later than 14 days after the date of entry of the judgment or decree."[85] "A bill of costs and disbursements must be supported by an affidavit and distinctly set forth each item so that its nature can be readily understood. An itemization and, where available, documentation of requested costs in all categories must be attached to the bill of costs."[86] Only costs in approved categories may be awarded.[87] SATA has not filed a bill of costs, and the window for filing one will open once this judgment is entered.

---

[81] 15 U.S.C. § 1117(a) (2012).

[82] *Gracie v. Gracie*, 217 F.3d 1060, 1068 (9th Cir. 2000) (quoting *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1409 (9th Cir. 1993)).

[83] *See* LR 54-14(b)(1).

[84] *See* ECF No. 12-2 at 20–43.

[85] LR 54-1(a).

[86] LR 54-1(b).

[87] *See* LR 54-2–54-11.

| | |
|---|---|
| 1 | I therefore deny SATA's request for attorney's fees and costs without prejudice to its |
| 2 | ability to file a bill of costs and a properly supported motion for attorney's fees. |

## Conclusion

Accordingly, IT IS HEREBY ORDERED that SATA's motion for default judgment **[ECF No. 12] is GRANTED in part and DENIED in part:**

- The **Clerk of Court** is directed to **ENTER JUDGMENT in favor of SATA and against Hoteche in the amount of $50,000 in statutory damages**;
- SATA's request for attorney's fees and costs is denied without prejudice;
- IT IS FURTHER ORDERED that Hoteche—and its officers, agents, servants, employees, confederates, attorneys, and any persons acting in concert with any of them and who have knowledge of this order by service or actual notice—are **permanently enjoined** from:

    a. Using any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks in commerce including, without limitation: (i) by selling, offering for sale, distributing, promoting, or advertising any good or service in connection with such reproduction, counterfeit, copy, or colorable imitation of the SATA Marks; (ii) by displaying any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks on the website accessible through the domain name https://www.hoteche.com or any other website owned or controlled by Hoteche or that displays Hoteche's products (collectively, the "Enjoined Websites"); or (iii) by displaying any reproduction, counterfeit, copy, or colorable imitation of the SATA Marks at any trade show in the United States, including but not limited to, at any future Automobile Aftermarket Products Expo ("AAPEX") trade show; and

    b. Manufacturing, using, selling, offering to sell, or importing into the United States items embodying designs that are the same as or substantially similar to the designs claimed in U.S. design patents D552,213 S and

D459,433 S, including, without limitation, by: (i) offering to sell and selling such products to individuals or companies in the United States through the Enjoined Websites or otherwise; or (ii) offering to sell or selling such products at any trade show in the United States, including, but not limited to, at any future AAPEX show.

The **Clerk of Court** is directed to **ENTER JUDGMENT ACCORDINGLY** and **CLOSE THIS CASE**.

DATED: December 4, 2017

_____
U.S. District Judge Jennifer A. Dorsey